## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 15 2017, 7:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charlene Renier,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 15, 2017

Court of Appeals Case No.
09A05-1607-CR-1709

Appeal from the Cass Superior
Court

The Honorable Richard
Maughmer, Judge

Trial Court Cause No.
09D02-1506-F5-55

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Charlene Renier was convicted of corrupt business influence as a Level 5 felony and conspiracy to commit theft as a Level 6 felony. Renier appeals her convictions, raising two issues for our review, one of which we find dispositive: whether the State presented sufficient evidence to sustain Renier's conviction for corrupt business influence. Concluding the State did not present sufficient evidence, we reverse and remand.

# Facts and Procedural History

[2] On May 9, 2015, a store employee from a Walmart located in Logansport, Indiana, discovered an empty cell phone box and assumed the cell phone was stolen. Asset Protection Manager Brady Herrington reviewed surveillance footage and observed at least three individuals grouped together in the cell phone aisle, where one individual opened a cell phone package and concealed a cell phone under his or her clothing. The individuals, two of whom who were later identified as Kenny Purvis and Adam Wakefield, were also seen on surveillance footage stealing several video games. The individuals then exited the store without paying for the merchandise and drove away in a red truck.[1]

---

[1] During opening statements at trial, the State acknowledged Renier was not among the individuals who were in the Walmart on May 9, 2015.

[3] On May 15, 2015, store employees notified Herrington that keeper boxes were discovered empty near the electronics aisle.[2] Herrington reviewed surveillance footage and observed Purvis, Wakefield, and an unidentified individual in the video game aisle. Although the footage did not capture the individuals stealing any merchandise, it does show Wakefield and the unidentified individual at the location where the empty keeper boxes were found. The individuals exited the parking lot of the store in the same red truck.

[4] On May 19, 2015, Amy Powers, also a member of Walmart's asset protection group, spotted Purvis, Wakefield, and a woman, later identified as Renier, heading toward the store's electronics department with a shopping cart containing clothing items. Given her experience, Powers believed the group would use the clothing to conceal store merchandise and called law enforcement. Prior to law enforcement arriving, surveillance footage shows Renier placing video games into the shopping cart. Footage also shows the trio splitting up, with Wakefield taking control of the shopping cart and Purvis and Renier looking at DVDs. Soon thereafter, law enforcement arrived and escorted Purvis, Wakefield, and Renier to the Asset Protection Office. At the time, Wakefield's shopping cart held $453 worth of merchandise, including a copy of the Witcher 3: Wild Hunt video game that had been just released that

---

[2] Keeper boxes are clear boxes that provide security for store merchandise and are designed to deter theft. Transcript, Volume 1 at 8. Such boxes are often used to protect electronic merchandise, including DVDs and video games. *Id*. If an individual attempts to leave a store without paying for merchandise housed in a keeper box, an alarm sounds. *Id*.

day. Wakefield was also found with empty Walmart plastic bags stuffed in his pockets, which Powers later explained is a common method of stealing from Walmart. When law enforcement reviewed the surveillance footage, it determined the trio travelled to Walmart in Purvis' mother's red truck. A subsequent search of the truck uncovered eight copies of the Witcher 3 video game. Store employees from the Logansport Walmart determined the video games were from its store.

[5] A subsequent investigation into the matter uncovered that Purvis and Renier were dating and living together in a residence in Pierceton, Indiana, a small town located approximately sixty miles northeast of Logansport. At the time, both Purvis and Renier were members of a Facebook group titled Wabash County Sell Anything and Everything. Purvis used this Facebook group to sell new and unopened video games. On May 9, 2015, Purvis posted to the Facebook group a picture of thirteen unopened video games, noting a sale price of $30 each.

[6]  On May 26, 2016, the State charged Renier with Count I, corrupt business influence, a Level 5 felony; Count II, conspiracy to commit theft, a Level 6 felony; and Count III, attempted theft, a Level 6 felony. A jury found Renier guilty as charged. The trial court entered judgment of conviction on Counts I and II and vacated the finding of guilty on Count III. The trial court sentenced Renier to an aggregate sentence of four years in the Indiana Department of Correction, with the entirety of the sentence suspended to probation. This appeal ensued.

# Discussion and Decision

## I. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, a reviewing court shall consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The court neither reweighs the evidence nor reassesses the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, the court must respect the jury's exclusive province to weigh conflicting evidence. *Id.* Therefore, the court should affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane*, 867 N.E.2d at 146-47 (citation omitted).

## II. Corrupt Business Influence

Renier contends there is insufficient evidence to sustain her conviction for corrupt business influence. Specifically, she argues the State did not establish she engaged in a pattern of racketeering activity. We agree.

Renier was charged and convicted under the following provision of Indiana's Racketeer Influence and Corrupt Organizations ("RICO") Act: "A person . . . who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity . . . commits corrupt business influence, a Level 5 felony." Ind. Code § 35-45-6-2(3). "Enterprise" can mean a group of people associated in fact. Ind. Code § 35-45-6-1(c)(2). A

"pattern of racketeering activity" is defined as "engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." Ind. Code § 35-45-6-1(d). "'Racketeering activity' includes committing, attempting to commit, conspiring to commit, or aiding and abetting in the commission of theft, among other crimes." *Robinson v. State*, 56 N.E.2d 652, 657 (Ind. Ct. App. 2016) (quoting Ind. Code § 35-45-6-1(e)(14)), *trans. denied*. Thus, in order to convict Renier under Indiana Code section 35-45-6-2(3), the State was required to prove: 1) Renier associated with a group of people, 2) Renier, as a part of the group, knowingly or intentionally participated in least two instances of committing, attempting to commit, conspiring to commit, or aiding and abetting in the commission of a theft,[3] and (3) those incidents have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated events. We now address whether the State submitted evidence sufficient to establish the second element.[4]

---

[3] Although we acknowledge Indiana Code section 35-45-6-1(e) lists numerous crimes satisfying this element of corrupt business influence, we only note it as theft because the State's theory is Renier participated in activity relating to thefts.

[4] Renier does not argue the evidence is insufficient to establish the first element of the crime, i.e. she associated with an enterprise.

[10]	At the outset, we note both parties agree Renier's conduct captured by surveillance footage at the Logansport Walmart on May 19—regardless of whether we label her acts as conspiring to commit theft or attempted theft—supports a finding of one instance of racketeering activity. However, we struggle to find any evidence in the record establishing Renier knowingly or intentionally participated in a second instance of racketeering activity. In an attempt to satisfy this element of the crime, the State points to evidence that Renier and Purvis lived together; Renier was a member of the Facebook group Purvis used to sell video games; Purvis and Wakefield previously stole items from the Logansport Walmart on May 9, 2015, and May 15, 2015; surveillance footage captured Renier putting multiple video games in Wakefield's shopping cart on May 19, 2015; and eight additional copies of Witcher 3, which was released for the first time on May 19, 2015, were discovered in the red truck in the parking lot. Stated differently, the State believes the evidence establishes Renier must have known of Purvis' scheme, and at some point between the theft on May 9, 2015, and the attempted theft on May 19, 2015, knowingly or intentionally participated in a second racketeering activity. The State's position is a stretch.

[11]	We conclude this evidence, at most, establishes Renier conspired to commit theft, was associated with an enterprise, and knowingly participated in only *one* instance of racketeering activity. The State did not admit any evidence establishing Renier had knowledge of, or participated in, Purvis' scheme prior to May 19, 2015. The facts Renier lived with and dated Purvis and Renier was

a member of the same Facebook group used by Purvis to sell video games do not prove she had knowledge of the scheme or that she knowingly or intentionally participated in any prior thefts or subsequent sales of stolen merchandise. As to the eight video games discovered in the red truck, the evidence only establishes those games were from the Logansport Walmart store and had been released for the first time that day. Thus, this evidence merely gives rise to a lone reasonable inference: the games must have been taken and placed into the red truck at some point prior to law enforcement detaining the trio inside the store. Unlike the other previous thefts, however, there is no surveillance footage showing who stole these games, or when and how the theft occurred. Thus, the State's request we infer from the evidence Renier participated in a second instance of racketeering activity is unreasonable. We therefore conclude the State failed to prove Renier knowingly or intentionally participated in a pattern of racketeering activities.

[12]     We also take this opportunity to address our concerns as to the practicality of the State's RICO case against Renier. In *Robinson*, the defendant was charged with, and convicted of, violating the RICO statute after shoplifting from the same Walmart store on two separate dates. 56 N.E.3d at 655. On appeal, the defendant challenged the sufficiency of his RICO conviction and we concluded the State did not present sufficient evidence to sustain the conviction. *Id.* at 659. Notwithstanding this conclusion, we also addressed the practical manner of the State's utilization of the RICO statute to charge the defendant:

We simply do not believe the commission of two acts of shoplifting of this type is the kind of activity our legislature meant to be covered by our RICO statute. We have previously observed that our RICO statute "was designed to address the more sinister forms of corruption and criminal activity . . . RICO is structured to reach and punish these diabolical operations that are a greater threat to society than random theft." Additionally, we have described the intent behind RICO laws as permitting cumulative punishment and to "seek eradication of organized crime . . . by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." RICO laws were designed "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."

*Id.* at 659-60 (alterations in original) (citations, some internal quotation marks, and footnotes omitted). We therefore further concluded the defendant did not fit the definition of someone involved with any kind of organized crime and declined to apply RICO. *Id.* at 660. Although we acknowledge the evidence in the record pertaining to Purvis' role as the enterprise leader may warrant a RICO case against him and such evidence establishes a criminal scheme unlike that found in *Robinson*, we express hesitancy, consistent with *Robinson*, as to whether the State's theory of Renier's participation in the enterprise, even assuming it is accurate and supported by the evidence, is the kind of activity our legislature intended to punish under the RICO statute.

[13] For these reasons, we conclude the State did not present sufficient evidence to sustain Renier's conviction for corrupt business influence. On remand, we

instruct the trial court to vacate Renier's conviction and sentence for corrupt business influence.[5]

# Conclusion

[14] The State's evidence is insufficient to establish Renier participated in a pattern of racketeering activity and therefore her conviction for corrupt business influence cannot stand. Accordingly, we reverse and remand with instructions for the trial court to vacate Renier's conviction and sentence for corrupt business influence.

[15] Reversed and remanded.

Kirsch, J., and Barnes, J., concur.

---

[5] Because Renier's sentence for corrupt business influence cannot stand, we need not address her contention that her convictions violate Indiana's prohibition against double jeopardy.